# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re ) | |
| ) | JUDGE RICHARD L. SPEER |
| Cheryl L. Harter ) | |
| ) | Case No. 08-31840 |
| Debtor(s) ) | |

## MEMORANDUM OPINION AND DECISION

This cause comes before the Court on the Motion of the United States Trustee to Dismiss Case for Abuse pursuant to 11 U.S.C. § 707(b)(1), 11 U.S.C. § 707(b)(2), and 11 U.S.C. § 707(b)(3). (Doc. No. 21). The Debtor filed an objection thereto. (Doc. No. 25). A Hearing was then held on this matter after which the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee should be Granted.

### FACTS

On April 15, 2008, the Debtor, Cheryl Harter, filed a voluntary petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). The Debtor set forth in her petition that her debts were primarily consumer debts. The Debtor's bankruptcy schedules revealed secured debts in the amount of $329,979.00, which represented two mortgages encumbering real

In re: Cheryl L. Harter
Case No. 08-31840

property in Montpelier, Ohio which the Debtor owns jointly with her husband. The Debtor's schedules show that her one-half interest in the Montpelier property is worth $191,230.00.

The unsecured debt in this case totals $257,196.40, which consists of $225,000.00 owed on a judgment, $31,396.40 of accrued debt on three different credit cards and $800.00 owed for medical bills. The $225,000.00 judgment, however, was satisfied after the Debtor's petition was filed.

The Debtor is employed as a bookkeeper for Bryan Tax & Accounting, Inc., a position she has held for five and one half years. The Debtor's schedules set forth a net monthly income of $952.00. Her income in 2007 was $12,904.00, which represents a decline from the previous two years. The Debtor's husband is self-employed and reports a net monthly income of $7,550.00. Based on these figures, the Debtor and her husband claim a household income of $8,502.00 a month.

Against their income, the Debtor and her husband set forth $8,314.61 in necessary, monthly expenditures, leaving a monthly surplus of $187.39. These expenses included the following: (1) a mortgage payment of $2,125.00; (2) expenditures totaling $1,614.96 for utilities, home maintenance, food, and other necessities; (3) vehicle operation costs of $780.00; (4) insurance payments of $523.58; (5) various taxes, including income tax, in the amount of $1,244.80; and (6) installment payments for an automobile and a farmland contract totaling $2,026.27.

In her initial Schedule J, the Debtor claimed that she was allocating $615.00 a month from her income to pay for a lease on her vehicle, a 2008 Chrysler Sebring. However, in the Debtor's amended schedules that expense had been reallocated to her husband.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee (hereinafter "UST") to Dismiss. Matters concerning the dismissal of a case, which affect both the ability of the debtor to

Page 2

In re: Cheryl L. Harter
Case No. 08-31840

receive a discharge and directly affect the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The motion of the UST to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1), 11 U.S.C. § 707(b)(2) and 11 U.S.C. § 707(b)(3). Section 707(b)(1) is the salient provision, setting forth a foundation, allowing a court to dismiss a debtor's case when abuse is found to exist, by providing:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Sections 707(b)(2) and 707(b)(3) then set forth the methods by which a court is to make a determination of abuse. First, § 707(b)(2) provides a formulaic approach, commonly referred to as the 'means test,' for gauging abuse. If a certain ability to pay threshold is met under the 'means test,' the statute provides that "the court shall presume abuse exists." 11 U.S.C. § 707(b)(2)(A).

Alternatively, § 707(b)(3) allows a court to dismiss a case for abuse if the debtor has filed his or her petition in bad faith, or if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." If the Court finds abuse under either § 707(b)(2) or § 707(b)(3), then it may grant a party's motion to dismiss. For the reasons stated herein, the Court finds that § 707(b)(3) is dispositive regarding the issue of abuse, and, therefore, the Court will not discuss the applicability of § 707(b)(2).

Section 707(b)(3) sets forth:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–

Page 3

In re: Cheryl L. Harter
Case No. 08-31840

> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

In citing to § 707(b)(3) as a basis for dismissal, no allegations were made by the UST, either in its Motion or at the Hearing, of "bad faith" as set forth in subparagraph (A). Accordingly, the Court will assume that, in seeking to have the Debtor's case dismissed for abuse under § 707(b)(3), the UST is relying exclusively on subparagraph (B), 'the totality of the circumstances.'

Section 707(b)(3) was added to the Code through the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, known by its acronym BAPCPA. Although decided prior to the enactment of BAPCPA, *In re Behlke*, 358 F.3d 429 (6th Cir. 2004) is recognized as a seminal Sixth Circuit decision regarding whether the totality of the debtor's circumstances indicate abuse under § 707(b)(3). *In re Glenn*, 345 B.R. 831 (Bankr. N.D.Ohio 2006), *see also In re Mooney*, 313 B.R. 709 (Bankr. N.D.Ohio 2004). The Court in *In re Behlke* stated that abuse could be predicated upon want of need. *Id.* The Court then further explained that want of need is ascertained by considering whether the debtor is "'needy' in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets." *Id.* at 435.

Whether a debtor has the ability to repay his or her creditors is an often central consideration when assessing a debtor's need. *In re Krohn*, 886 F.2d 123, 126-27 (6th Cir. 1989). A frequently utilized measure, when determining whether a debtor has the ability to repay their debts, is to ascertain whether, under a hypothetical Chapter 13 repayment plan, the debtor could repay a meaningful percentage of his or her unsecured debts. *In re Behlke*, 358 F.3d at 434-35; *In re Glenn*, 345 B. R. at 836. This determination is made by reference to the amount of "disposable income" the debtor has available to pay into the plan. In turn, the term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.

Page 4

In re: Cheryl L. Harter
Case No. 08-31840

Ohio 2004). In determining a debtor's disposable income, the court may take into consideration a non-debtor spouse's income. *In re Cardillo*, 170 B.R. 490, 492 (Bankr. D.N.H. 1994).

It is established that whether a debtor has the ability to repay their debts is a factual question for the court to resolve, and is hence not dependent on the financial figures provided by a debtor. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007). Rather, "in its role as the trier-of-fact, the Court is under a duty to scrutinize a debtor's expenses, and make downward adjustments where necessary, so as to ensure that the debtor's expenses are reasonable. *Id.*; *see also Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 481 (6th Cir. 1996). Similarly, when determining a debtor's 'disposable income,' a court may impute income to the debtor when it would be equitable to do so– *e.g.*, when the debtor is voluntarily underemployed. *In re Felske*, 385 B.R. 649, 655 (Bankr. N.D.Ohio 2008).

Based on the Court's authority to equitably adjust the Debtor's budgetary figures, the UST argued, in its Motion and at the Hearing, that the Debtor should not be allowed to fully expense against her income the resources now devoted to pay for her vehicle. As an additional indicium of abuse, the UST pointed out that the Debtor enjoys a standard of living beyond that of most other debtors, living in a more than modest home that is valued at around $400,000.00. Both these points have merit.

This Court has not viewed favorably debtors who seek to maintain expensive homes or vehicles while simultaneously seeking to discharge their voluntarily incurred unsecured obligations. As previously noted by the Court, bankruptcy is "meant to provide a debtor a fresh-start, but not a head start. Thus, when seeking bankruptcy relief, debtors may be expected to do some belt tightening, including, where necessary, foregoing the reaffirmation of those secured debts which are not reasonably necessary for the maintenance and support of the debtor and his family." *In re Wadsworth*, Ch. 7 Case No. 07-32407, 2007 WL 4365374 (Bankr. N.D.Ohio 2007) (internal citations omitted). Contrary, however, to this tenet, the Debtor in this matter seeks bankruptcy protection at no cost to her.

Page 5

In re: Cheryl L. Harter
Case No. 08-31840

At the same time, the Debtor's financial figures are cryptic, making any exacting determination regarding her "disposable income" impossible. On her original schedules, the Debtor listed the $615.00 a month payment for the lease on her car as a personal expense, but on her amended schedules it is listed as an expense of her husband. This is a common theme with the Debtor as she has provided various and conflicting expense figures in her original schedules, her amended schedules, and at the Hearing held on this matter. Some of the Debtor's figures have reflected a surplus in 'disposable income' while others have reflected a monthly deficiency. It would thus seem that the Debtor's financial figures tend to evolve into new forms as it becomes expedient to do so.

Yet, regardless of what expenses are specifically allocated to the Debtor, or are paid by her husband, it is clear that the Debtor operates a vehicle for which she has contractually agreed to pay $615.00 a month. In addition, the facts show that the vehicle costs the Debtor an additional $390.00 a month to operate. Thus, the Debtor's cost of driving her vehicle, totaling $1,005.00 per month, exceeds her reported net monthly income of $950.00. This hardly seems reasonable. As this Court has previously explained in the context of § 707(b)(3)(B), "frugality is required for an expense to be reasonably necessary." *In re Burge*, 377 B.R. 573, 578 (Bankr. N.D.Ohio 2007).

Furthermore, although the § 707(b)(2) 'means test' is not strictly applicable, it does provide guidance as to whether an expense is reasonable. *In re Singletary*, 354 B.R. 455 (Bankr. S.D.Tex. 2006); *In re Henebury*, 361 B.R. 595 (Bankr. S.D.Fla. 2007). In this case there is an appreciable difference between the Debtor's total vehicle allocation and what is allowed under the 'means test.' The 'means test' allows for a monthly expense of $672.00 for operating and ownership costs for one vehicle.[1] The Debtor, however, spends $1,005.00 a month on her vehicle, which exceeds the amount allowed by the 'means test' by more than $300.00.

---

[1] This figure was taken from the IRS Local Transportation Expense Standards, which can be found at: http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data

Page 6

In re: Cheryl L. Harter
Case No. 08-31840

With the Debtor having a substantial vehicle expense which consumes all of her income, it becomes reasonable to expect that the Debtor should offer a viable reason for such an expenditure The Debtor, however, has not offered any explanation as to her need to expend such significant sums to own and operate a vehicle. As such, it can only be concluded that the Debtor's vehicle expense is excessive.

At the Hearing on this matter, the Debtor's main argument against a finding of abuse was that excluding her from Chapter 7 relief would unfairly implicate her husband's finances. On this point, it was made clear to the Court that the Debtor's husband is responsible for paying most of the household expenses. All the same, the Debtor is not entitled to Chapter 7 relief simply because her husband's finances may be impacted. To the contrary, the law imposes on a spouse the duty to support the other. *See* O.R.C. 3103.01 ("Husband and wife contract towards each other obligations of mutual respect, fidelity, and support.")

As a result, in "a variety of contexts, bankruptcy courts take into account the income of a debtor's non-filing spouse or co-habitant because it is necessary to evaluate a debtor's ability to repay her financial obligations." *In re Greco* 251 B.R. 670, 679 (Bankr. E.D.Pa. 2000). For example, it has been noted that "[w]here the non-debtor spouse has a substantial income that supports a comfortable lifestyle or significant discretionary purchases of luxury items, courts have sometimes considered more of that spouse's income to be available to supply basic necessities, making more of the debtor's income available" to repay her obligations. *In re Innes*, 284 B.R. 496, 507 (Bankr. D.Ka. 2002); *see also In re White*, 243 B.R. 498 (Bankr. N.D.Ala. 1999). This is the situation here, with there being a disconnect between the Debtor's attempt to discharge a modest amount of unsecured debt, $30,000.00, while living in a home worth nearly $400,000.00.

Accordingly, for all these reasons, it is the finding of this Court that the Debtor has the ability to repay her unsecured creditors after making reasonable adjustments to her expenses, and that no circumstances mitigate against dismissal. As such, unless the Debtor voluntarily converts her case, the Court is bound to promptly enter an order of dismissal pursuant to § 707(b)(1). In reaching the

In re: Cheryl L. Harter
Case No. 08-31840

conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for the presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday, November 17, 2008, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

It is **FURTHER ORDERED** that, subject to the Debtor's election to convert this case, the Motion of the United States Trustee to Dismiss as applied under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: November 5, 2008

/s/ Richard L. Speer
Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 5th day of November 2008 to:

Cheryl L. Harter
9720 County Road H
Montpelier, OH 43543

Steven L. Diller
124 E Main St
Van Wert, OH 45891

Ericka S. Parker
33 S Michigan, #203
Toledo, OH 43604

Dean Wyman
Office of the US Trustee
201 Superior Aveneue, Suite 441
Cleveland, oh 44114-1240

                                          /s//Diana Hernandez
                                     Deputy Clerk, U.S. Bankruptcy Court